Good morning. Kenneth Tran on behalf of Mr. Maldonado, the appellant. May it please the Court. I'd like to reserve two minutes if I can. Sure. Mr. Maldonado filed an affidavit in the district court in which he disputed factually that he had waived his right to appeal the deportation order and that it was not considered an intelligent waiver at the time. He also testified in the district court about his experience before the IJ when he had his deportation hearing. Not only did he say he didn't understand what his waiver of right to appeal was and what it meant to him, he said he didn't understand what the aggravated felony was, what the impact of what that would be on the proceedings, that he didn't understand what type of relief he was eligible for. He hadn't heard of the type of relief that we had raised as one of our issues, the 212H relief. And not only did he say these things in court and testify and file an affidavit, but there were also letters before the IJ where he complained about his attorney. And I think those letters do corroborate that there was an issue going on. And those letters were never resolved. If you look at the brief transcript from that hearing, Mr. Maldonado, the letters were brought to his attention, to the IJ's attention, and he said he showed them to the attorney and nothing more was said. That happened after he was already ordered deported and waived his right to appeal. So what's the bottom line of your argument, that his waiver was not knowing intelligent? It wasn't knowing intelligent, but we raised that issue in the district court and the government had the burden of proving by clear and convincing evidence that he did waive his right to appeal. They had an opportunity to cross-examine him when he was on the witness stand. They chose not to as a tactical matter to pursue this issue and focus more on the issue I raised regarding de camps and whether or not Mr. Maldonado was reportable as charged in his NTA. They also challenged his 212H claim. So I believe that they've waived that issue on appeal because he submitted facts, brought it to the attention of the district court, and the government didn't contest it. They had the opportunity to do so, and the burden was theirs. I think if they don't do that, they waive their right to appeal that issue now. So your main argument is that they waived their right to challenge whether or not he waived his right to appeal? Exactly. They didn't challenge it. It's the first time it came up from the government's perspective was on appeal. And I think that after Johnson and DeMaia, there's not much dispute left. I hope that a residential burglary conviction under California law is not an aggravated felony crime of violence under the immigration law. The government doesn't seem to contest that now in their 28-J letter and that it applies retroactively to his situation. So the question is whether he meets the other criteria. What is it of 1326D, the various conditions? Well, if he's not deportable as charged, then he was denied due process and he suffered prejudice. The procedural requirements are not imposed on him because he did not knowingly – he did not give a considerate and knowing waiver of his right to appeal. And that was the opportunity was in the district court for the government to claim that he didn't do that. Okay. Do you want to save the balance of your time for – Yes. Let's save the balance. All right. Let's hear from the government. Good morning, Your Honors. May it please the Court, Mark Rahe for the United States. Judge Paz, as you pointed out a minute ago, the government does not dispute that the defendant meets the third prong of 1326D, now in light of DiMaia. And since his challenges to his removability is charged, post-removal precedent is retroactive. The government's only position or only remaining claim then would be to argue that there was not a demonstration of exhaustion of remedies, which is another prong of 1326D. And our position would be that by the plain language of the statute, it does put the burden on the defendant. Now, there's a good reason – or I'll at least proffer this reason why this issue really wasn't explored much below. It's because the parties were centrally focused on that third prong. At the time, this Court, since 1990, United States v. Becker, it squarely held that a California residential burglary conviction was an aggravated felony. And the defendant's position was that was the only basis of removal, the I.J. was wrong about that, and therefore I didn't have a knowing, intelligent waiver of appeal. So the parties, you know, the whole question was whether Becker and its progeny had been rendered invalid by intervening Supreme Court precedent. So does that excuse – are you saying then that excuses you from addressing Items 1 and 2 under 1326D? Well, it may not be the best excuse, Your Honor, but I'm just saying that's what the record – I mean, you know, I'm playing it in the hand. Well, okay, okay. But our position is that it is – oh, I'm sorry. No, I was wondering the significance of that excuse, you know, whether it's heavy enough. This Court has said in other contexts, too. I mean, in United States v. Leon Paz, it's a case that we cited in our 28J record or 28J letter, the stated policy of this Court does appear to be that it wants district courts to reach other prongs in the first instance. And in that case, in Leon Paz, the issue was under 1326D3 whether the alien had shown prejudice. And even though that had been a rule for, you know, at least 10 years since United States v. Pro Tovar, the district court never reached that issue. And so this Court said it was still, as a prudential matter, it would prefer to see the district court reach that in the first instance. So what would – your 28J letter said – just – we acknowledge there was a problem with the underlying basis for removal. Just summarily remand this back to the district court for further proceedings on prongs one and two. What must the district court do in your view? Well, then to really focus on that waiver of appeal. I mean, so far – What additionally needs to be added to the record? I think for one thing, a transcript of the action – Isn't it a legal conclusion at this point? Well, I think it's mixed, Your Honor, because if the idea is the knowing intelligent, that's a fact-bound inquiry. What exactly was the defendant told? I mean, when you look at pages 80 to 82 of the excerpts – Well, we don't have a transcript of the actual IJ hearing, correct? Correct. So we have that little summary that's contained in the record. Right. Right. And so we know at the bottom of that it says he waived his right to appeal. Correct. We don't know what was – apparently that record doesn't show what he was advised or anything, correct? Correct. I mean, that summary is at pages 80 to 82, the excerpts of record. That's the last line because that was the last part of the proceeding. Also, at not one point in those three pages is there any mention of one iota of confusion by this defendant. The first line is that – or the second line is that he confirms that he was advised of his rights. At least once or twice during that hearing, too, the IJ says, do you understand what's going on? Do you have any confusion? The defendant never raises a single word. Did he testify in the motion to this hearing in district court, as counsel just said? I would say yes and no. Well, he was either on the stand or he wasn't. It's an unusual thing. It was a bench trial. You know, 1326D is supposed to be a pretrial motion. The legality of the order of removal is not an element. But the way Judge Burns went about – the way he proceeded with this was he started the bench trial, and then when it came time for the government to introduce the deportation records, he had hearing on the motion. Then he ruled on the motion because it was all about whether DeComp had rendered Becker irreconcilable. He denied it. Then the government finished its case, and then the defendant testified. But so that's why I say yes and no, Your Honor, because he testified below, but he wasn't testifying as to the motion then. And, in fact, the district court said – Well, did he testify about what took place at the immigration hearing? He made a few comments about, yeah, of course now, you know, with 10 years later and the affidavit, now he was suddenly claiming that he didn't understand. But was the government's cross-examination rights curtailed in any way? No, I wouldn't say that, Your Honor. I think, you know, at that point they were just focusing on – the prosecutor wanted to make sure that the defendant was admitting a lot of the – basically the elements of the crime. And then I know at the end even Judge Burns said, well, I appreciate hearing all this. I think most of these facts go in mitigation. I'll consider them at sentencing. And then sentencing also immediately took place. Related to what Judge Paez was asking, I'm not sure what even you think this hearing on remand would look like. What's your position on who now would carry the burden of proof? Is it still your position that the defendant would carry the burden of proof? Well, under 1326d, by its plain language, it says cannot – unless he proves 1, 2, and 3. But I do know that there's – That we have a case. Case law from this circuit. Right. Exactly, which says – so I don't know how that can be reconciled, but obviously that – Well, it just says on whether the waiver is knowing and intelligent. The burden is on the government on that limited point. So on remand, what's your position on who carries the burden of proof? We would embrace it. And what we would do is get that transcript. So, in effect, there would be a second bite out of the apple you'd have because I take it the record does not reflect that you pushed the district judge to do as the Ninth Circuit has admonished, and that is make determinations on all the factors. That is correct, Your Honor, because our focus was on the argument that the defendant raised, which was all about removability. Is it your expectation that on remand there would be mandatory exploration of a claim of ineffective assistance of counsel? Is it my understanding that that would happen? Yes. I mean, I don't know. Usually this court prefers having those kind of proceedings in a habeas. I know, but that's – I mean, you know, we've heard effectively an assertion that there was ineffective assistance of counsel then. And what I'm asking you is how you perceive that to be handled in the district court, if at all. Well, I guess I would say if at all, and it shouldn't be, because as a matter of law, this claim of ineffective assistance of counsel, IAC claims have to be reviewed as of the time of the disputed conduct. In 2005, there was no question under United States v. Becker that California residential burglary was an aggravated felony. And I guess the government's position would be then, notwithstanding the claims of ineffective representation, whether this alien had F. Lee Bailey or the worst lawyer in the world, nothing could change the fact. Well, you know, he did – there's something in the record, as I recall, that he thought he had one lawyer, met with the lawyer beforehand, and then he shows up at the hearing and somebody else shows up as his counsel. He doesn't know what's going on. Right. That was his claim. And he filed a G-28. I believe there were two lawyers listed on that form. That's the form that announces representation. His claim is that he spoke to one, but that the other one was the one who then showed up. Yeah, and he didn't know what was – you know, that's kind of bizarre, right? Yes. But again, whether he had had ten meetings and whether it was the same lawyer that came at that time, United States v. Becker was governing. And this Court's authority is that it's not ineffective to raise a feudal argument. What would have been wrong with it? Well, you have the right to appeal. You can appeal. We don't know what the lawyer said to him at all, do we? No. And I don't know, you know. You know, we have a couple of – and I know they're not binding – they're certainly not authority, but there's a couple of recent mem dispos that say that in this kind of instance where the underlying basis is knocked out, that due process satisfies both. I mean, it's a violation of due process. It's so fundamentally unfair that it satisfies prongs one and two as well. What do you think about that? I would disagree with that, Your Honor, because a lot of that goes to – this Court – I mean, let me start over.  You either attack removability as charged or the failure of the IJA to advise you of relief. This Court's case law has been clear for 15 years. If it has to do with the erroneous advisal of relief, then that excuses the failure to exhaust. And so, therefore, if it turns out somebody wasn't an aggravated felon but it only goes to removability – or, I'm sorry, to advisal of relief, in that situation, I can see why proof of fundamental unfairness would satisfy the whole kit and caboodle. This, on the other hand, was an attack to removability as charged. And under the Ninth Circuit's bifurcated approach to retroactivity, there's no question that for purposes of relief, his conviction was an aggravated felony in 2005. It wasn't until 2015 that Demeyer gets decided. So the government's position would be, since he can't dispute the failure of the IJA to advise him of relief, his sole grounds of appeal would have been that he's not removable as charged. If you were to say that an erroneous finding on that automatically takes care of exhaustion too, then what would be the whole point of the exhaustion requirement? That's the government's position. And unlike a failure to advise of relief, the reason that excuses failure to exhaust is because if an alien doesn't know, word one, that he might have been eligible for this, that, or the other relief, you can say, well, hey, his waiver of appeal wasn't valid. You know, if you have to go back down and conduct an evidentiary hearing, I don't quite understand how you would prove by clear and convincing evidence that he knowingly waived his appeal rights. How would you do that? In the following way. Given that there's no transcript of the… I mean, it would require getting that transcript. And then, you know, if it turns out the transcript that the IJA just blew through this didn't mention anything about the right to appeal, usually what happens at the beginning, there's a group advisal, everybody present, this is what's going to happen today, you have these rights. I mean, if it turns out that that wasn't made, the government will be the first to say, hey, no problem, you know, there's no failure, we'll dismiss the case. But if it shows that, in fact, this alien was advised of rights and then was point blank asked, well, do you want to appeal or not, and then says no, then it would be our position that that's a valid waiver, notwithstanding 10 years later filing a self-serving declaration where suddenly, oh, I didn't understand anything and everything. I mean, you look at excerpts of record pages 80 to 82, not one mention. And, you know, if the defendants or defense counsel put this summary in, one would think if there was even a single instance in there of the defendant having any confusion that that would have been present, and yet it's not. So that's all the government has. There was one last point, and then I'll let you sit down. But they also raised the issue that he wasn't advised of the possibility of relief under 212H? H, correct. What do you say about that? United States v. Guzman Ibarra. I mean, even my opponent admits in reply, I believe it was a Judge Fernandez opinion from a few months ago, that, again, at the time in 2005, the prevailing construction of law in the Ninth Circuit was that if an alien had an aggravated felony conviction, he was statutorily ineligible for relief. And that view, I believe, was changed in 2010 afterwards. And, again, based on what I said earlier, the Ninth Circuit has a bifurcated approach to retroactivity. If it has to do with removal, it's not retroactive. But I know that he's conceded the point, but just preserved it in his reply brief. Okay. He's got some rebuttal. Thank you. The little summary that we provided was actually pretty much everything that was said in that four-minute hearing before the IJ. I actually prepared that listening to the tape that was provided to me by the trial attorney for the government. There might be a word or two that is left out because they're paraphrased, but that's essentially all that was said below. So I don't think there's going to be another transcript developed. I also think the government can't now call Mr. Maldonado as their own witness and cross-examine him when in the past they chose not to. Now, Judge Burns chose the way this proceeding was going to take place. Maldonado did not. His testimony was not offered in mitigation. His testimony was offered to support his claim that he had grounds for relief because there was an extreme hardship on his mother, who was a citizen, and also on his children, who were a citizen. That's why he was claiming he should have been advised of 212H relief and also that the attorney should have researched this issue more and at least made an argument on his behalf. So your argument is that even though Judge Burns controlled the way in which the proceeding unfolded, there was no curtailment of cross-examination rights or any restrictions placed on the government in terms of presenting evidence such as the transcript. So whatever they wanted to present, they had the opportunity to do that. Did I get your argument right? Yes, and at some point the government actually objected to some of the questions I had, and that was the end of it. They didn't pick it up on cross-examination. Their cross-examination was focused strictly on the elements of the offense, which we had really conceded that he was guilty of reentering the United States. The question for us the whole time was the 1326D motion. And as far as the ineffective assistance of counsel argument, two attorneys didn't actually sign on to the case. Mr. Cardenas signed on to the case, and he had a partnership with Mr. Fifield. Mr. Fifield, unfortunately, is now deceased, but he was the one who showed up in court. He was not the attorney of record. And Mr. Maldonado stated that he had only spoken to him twice. He's in custody. He's a guy who just got out of prison and put right into immigration detention. He's not given any bond. His family hires an attorney, and the attorney talks to him a total of two times for 45 minutes, then sends another lawyer to represent him at the hearing. And the other lawyer did nothing other than agree with what the I.J. said. But I think you really have to look at the record. The letters in this case are really important because he complained about his lawyer, and this supports his argument that he's not just making self-serving claims, that he didn't understand what was going on. He was trying to prevent the proceedings from going forward, but he's not a lawyer. He gets in there. The judge doesn't address the lawyers. They go boom, boom, boom. The hearing's over. Oh, by the way, counsel, your client complained about your partner or something. Here are some letters, and that's the end of it. So I don't think that it's fair to Maldonado to say that what he now says is not true because he did try to prevent things from going forward at the time. Was the deficient performance on part of the lawyer, the one who showed up, basically not to advise his client to appeal the ruling? I mean, what harm would it have been to appeal the ruling? Well, there was no harm in appealing the ruling. I think that the argument that's made in the cases, and we talked about the government counsel said that I conceded the Guzman-Ibarra decision. I concede that the majority in dicta said that they couldn't hold the IJ to the burden of advising someone on the 212H relief, but if you look at Judge Fischer's concurring and dissenting opinion, he shows that not only was that an unnecessary part of their decision, but they also misconstrued the language of this Inri Rosas case. So I think you do have to look back and see that if relief was reasonably possible at the time, I believe that it was. It was a complicated argument. It's a difficult argument. I'm struggling to understand it as a criminal defense attorney. But also the aggravated felony argument, the case that most people do seem to focus on is Taylor and then Park. And Park, if you look at Park, Park was actually construing a different statute. They were construing the career offender sentencing guideline. They weren't construing the 1101A43F definition of a crime of violence. So a great attorney would have gone back and looked at the underlying opinions and challenged these issues, especially when it was getting paid. Or at least preserved the opportunity to. Right. I think he could have argued something. I mean, we've all been before courts when our clients are going down and they're going to get a tough sentence, but you don't just say, well, you know, I acknowledge that the court's going to hammer you and that's the proper result. You've got to put up a fight. In this case, had he put up a fight on a couple issues, those issues might have been preserved and might have actually succeeded. Okay. All right. Thank you. Thank you, counsel. Matter submitted.
judges: Murphy, Paez, Nguyen